**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  September 28 2022**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-31239 |
| | ) | |
| Teresa Nadeau, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 21-03058 |
| | ) | |
| The Danberry Co., | ) | Judge John P. Gustafson |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Teresa Nadeau and | ) | |
| Teresa Nadeau, Trustee of the 858 Revocable | ) | |
| Living Trust, | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OF DECISION AND ORDER</u>

This adversary proceeding is before the court on the "Renewed Motion to Dismiss Case" of Teresa Nadeau ("Debtor"), individually and as Trustee of the 858 Revocable Living Trust (hereinafter collectively referred to as "Defendants"), to dismiss the claims of The Danberry Co.'s ("Plaintiff") Amended Complaint. [Doc. #27].  Plaintiff filed a "Memorandum in Opposition to Defendant's renewed motion to dismiss" ("Response"). [Doc. #29].  Defendants did not file a

reply.

For the reasons below, the Renewed Motion to Dismiss is granted in part and denied in part.

## JURISDICTION AND VENUE

The district court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. §157(b)(2)(I). Venue is proper under 28 U.S.C. §1409(a).

## BACKGROUND[1]

Plaintiff is an Ohio corporation authorized to conduct business in the state of Ohio. [Doc. #1, ¶3]. Plaintiff is a real estate brokerage. [*Id.*, ¶7]. Plaintiff enters into agreements to sell, buy, rent, and manage residential and commercial properties. Debtor was the title owner of real property located at 920 Bury Road, Oregon, Ohio ("Property"). [Doc. #23, ¶11].

On or about November 2, 2017, Debtor entered into a real estate listing agreement with Plaintiff to sell the Property. [*Id.*, ¶¶6-7]. Under the listing agreement, Debtor agreed Plaintiff would be entitled to, as compensation for services rendered, a commission upon procuring a purchaser prepared to purchase the Property before the expiration of the listing agreement. [*Id.*, ¶7]. Plaintiff found such a purchaser. [*Id.*, ¶8]. The listing agreement provided that Plaintiff was entitled to the commission regardless of whether or not Debtor sold the Property. [Doc. #10-2, p. 1].

Debtor breached the listing agreement by refusing to execute an instrument that would convey the Property to the purchaser Plaintiff had procured. [Doc. #23, ¶¶9-10]. Plaintiff alleges Debtor's actions, including, but not limited to, the refusal to convey the Property reflects Debtor's intent not to perform under the listing agreement at the time of its execution. [*Id.*, ¶17].

On or about February 2, 2018, Plaintiff filed suit against Debtor seeking the unpaid

---

1/ This background constitutes a summary of the factual allegations drawn from Plaintiff's Amended Complaint, construed in the light most favorable to Plaintiff, accepting all well-pleaded factual allegations as true, and drawing all reasonable inferences in Plaintiff's favor. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020). The court takes judicial notice of the contents of its case docket. *Irons v. Maginnis* (*In re Irons*), 572 B.R. 877, 881 n.1 (Bankr. N.D. Ohio 2017). This court may also take judicial notice of facts contained in state court documents. *See, Robinson v. Woods*, 901 F.3d 710, 712 n.1 (6th Cir. 2018).

commission in a state court action, styled *Vidra et al. v. Nadeau*, in the Lucas County Court of Common Pleas (Case No. CI-2018-1344) ("Breach of Contract Lawsuit"). [*Id.*, ¶12]. Plaintiff eventually moved for summary judgment, arguing that under the listing agreement Plaintiff was entitled to its commission.

On May 23, 2019, the state court granted Plaintiff's motion for summary judgment on its claim for the unpaid commission and established Debtor's liability. [*Id.*]. The state court then advised the parties that it would schedule a hearing on damages, if the parties did not resolve this remaining issue by stipulation.

Before damages were determined, Debtor moved for the state court to reconsider its judgment entry establishing Debtor's liability. On or about August 12, 2019, the state court denied Debtor's motion for reconsideration. [*Id.*, ¶17].

On or about September 2, 2019, Debtor formed the 858 Revocable Living Trust without the benefit of counsel.[2] [Doc. #10-3, p. 18]; [Doc. #23, ¶¶13-14, 17].

On September 9, 2019, Debtor transferred the Property to herself as Trustee of the 858 Revocable Living Trust, and then recorded the deed reflecting this transfer with the Lucas County Recorder's Office. [Doc. #23, ¶¶11, 16]. The transfer was made for no consideration. [*Id.*, ¶16]. Debtor transferred the Property about a year and ten months before Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 9, 2021. There is no allegation that the transfer of the Property was not effective.

The "Grantor" and the "Trustee" of the 858 Revocable Living Trust are the same person, Teresa Nadeau. The terms of the 858 Revocable Living Trust provided that during Debtor's lifetime, the Trustee will hold, manage, and administer the Property for the benefit of the Debtor. [Doc. #10-3, p. 2]. The 858 Revocable Living Trust provided for an interest in favor of the

---

2/ "Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). In reviewing a motion to dismiss, however, the court may consider any "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Id.*; *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). This court therefore considers the 858 Revocable Living Trust to the extent it is relevant, as both referenced in the Amended Complaint and central to the claims in the Amended Complaint. [Doc. #10-3, pp. 1-22]. Consideration is also appropriate because the 858 Revocable Living Trust, unlike a declaration or affidavit, has independent legal significance. *See, Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441-42 (6th Cir. 2012)("When an exhibit is a contract, it is reasonable to consider the entire document because the contract has independent legal significance.").

Debtor.[3]

Bryce Alex Nadeau was also a beneficiary of the Trust. [*Id.*, p. 5]. The 858 Revocable Living Trust further provided upon Debtor's death, the Property would pass to Bryce Alex Nadeau. [*Id.*].

Debtor transferred the Property to the 858 Revocable Living Trust before the state court determined damages and awarded judgment. [Doc. #23, ¶¶11, 13-14]. Debtor transferred the Property intending to prevent Plaintiff from executing on any subsequently awarded monetary judgment. [*Id.*, ¶¶17, 23].

On October 3, 2019, Plaintiff was awarded a judgment in the amount of $19,873.23 ("Judgment") in the Breach of Contract Lawsuit. [*Id.*, ¶14]. Thus, the earned but unpaid commission was reduced to judgment. *Danberry Co. v. Nadeau*, 2019 Ohio Misc. LEXIS 2181 (Ohio C.P., Oct. 3, 2019). Debtor, proceeding pro se, filed an appeal after Plaintiff was awarded Judgment. [Doc. #23, ¶17].

On October 9, 2019, Plaintiff filed a praecipe for certificate of judgment. At the time, Plaintiff lacked knowledge of the transfer and believed Debtor, in Debtor's individual capacity, held all right, title, and interest to the Property. [*Id.*, ¶15].

On or about March 5, 2020, Plaintiff filed suit against Debtor, seeking relief from Debtor's alleged fraudulent transfer in a state court action styled *Danberry Co. v. Nadeau et al.*, in the Lucas County Court of Common Pleas (Case No. CI-2020-1680) ("Fraudulent Transfer Lawsuit"). [Doc. #10-4, pp. 1-4]. Plaintiff sought relief from Debtor's transfer of the Property to the 858 Revocable Living Trust under Ohio's Uniform Fraudulent Transfer Act. [Doc. #23, ¶17].

On November 20, 2020, the Judgment in the Breach of Contract Lawsuit was affirmed.

---

3/ The Amended Complaint alleges Debtor was the sole beneficiary. [Doc. #23. ¶13]. Defendants' Answer to the Amended Complaint admitted this allegation. [Doc. #28, ¶13]. However, the 858 Revocable Living Trust provides Bryce Alex Nadeau is also a beneficiary. [Doc. #10-3, p. 5]. Additionally, this court previously recognized this remainder interest in the Property held by the beneficiary Bryce Alex Nadeau. *In re Nadeau*, 2022 WL 456708 at *3, 2022 Bankr. LEXIS 363 at *7 (Bankr. N.D. Ohio Feb. 14, 2022). "A trust can be created without notice to or acceptance by any beneficiary or trustee." Restatement (Third) of Trusts §14 (Am. Law Inst. 2003). "An inter vivos trust, revocable or irrevocable, may be created by declaration without acceptance by any of the beneficiaries." Restatement (Third) of Trusts §14 cmt. c (Am. Law Inst. 2003). Although notice to beneficiaries is not essential, failure to notify may be some evidence that the property owner did not intend to immediately create a trust. *Id.* A beneficiary may, upon learning that a trust has been created without accepting its benefits, disclaim a beneficial interest. *See,* Restatement (Third) of Trusts §14 cmt. c (1) (Am. Law Inst. 2003); *see also,* Restatement (Third) of Trusts §58 cmt. c (Am. Law Inst. 2003)("A designated beneficiary of a spendthrift trust is not required to accept or retain an interest prescribed by the terms of the trust. Thus, an intended beneficiary may reject a beneficial interest or power of appointment by a proper disclaimer."). The Amended Complaint does not allege a disclaimer of a beneficial interest.

*Danberry Co. v. Nadeau*, 2020 WL 6819190, 2020 Ohio App. LEXIS 4213 (Ohio Ct. App. Nov. 20, 2020), *aff'g*, 2019 Ohio Misc. LEXIS 2181 (Ohio C.P., Oct. 3, 2019).

On December 10, 2020, during a pretrial hearing in the Fraudulent Transfer Lawsuit, Debtor informed the state court that the Fraudulent Transfer Lawsuit would be futile because she was currently unemployed, had no money, and could not afford an attorney. [Doc. #23, ¶17].

On July 9, 2021, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. [*Id.*, ¶5]. The filing of the petition stayed the pending Fraudulent Transfer Lawsuit. [*Id.*, ¶17].

## I. The Initial Adversary Complaint.

On October 22, 2021, Plaintiff commenced this adversary proceeding by filing the initial complaint requesting an order and judgment of nondischargeability under 11 U.S.C. §§523(a)(2)(A) and (a)(4). Plaintiff's demand for relief under Fed. R. Bankr. P. 7008, which makes Fed. R. Civ. P. 8(a) applicable to bankruptcy proceedings, asked this court for the general costs of this adversary proceeding, "an order and judgment, determining that the Plaintiff's claim against Defendant is a nondischargeable debt pursuant to §523(a)(2)(A) and/or (a)(4)" and "the entry of a monetary judgment against Defendant in an amount to be determined at trial, plus accrued interest at the contractual rate from and after September 9, 2019, up until the date of judgment, and for interest allowed at the statutory rate thereafter." [Doc. #1, p. 8].

Plaintiff alleged that the Defendants' post-judgment scheme to avoid collection efforts amounted to actual fraud under §523(a)(2)(A) and fraud or defalcation while acting in a fiduciary capacity under §523(a)(4). For example, Plaintiff's claim under §523(a)(2)(A) alleged the "claim for fraudulent transfer should be found to have arisen" as a result of either false pretenses, a false representation, or actual fraud. [Doc. #1, ¶21].

On November 10, 2021, Defendants moved to dismiss this adversary proceeding for lack of personal jurisdiction, alleging Plaintiff failed to serve Defendants or Defendants' counsel within seven days as required by Federal Rule of Bankruptcy Procedure 7004(e). [Doc. #3].

On November 10, 2021, Plaintiff filed a Request for Issuance of Alias Summons. [Doc. ##4-6].

On November 12, 2021, an alias summons was issued. [Doc. #7].

On November 12, 2021, Plaintiff filed a certificate of service certifying Plaintiff's counsel mailed the summons and a copy of the initial complaint by first class mail, postage pre-paid. [Doc.

#8].

On December 10, 2021, Defendants filed a "Motion to Dismiss Adversary Proceeding" under Fed. R. Civ. P. 9(b) and 12(b)(6), made applicable to bankruptcy proceedings under Fed. R. Bankr. P. 7009 and 7012(b). [Doc. #10]. On December 17, 2021, Defendants filed an Answer to the initial complaint. [Doc. #12].

On December 23, 2021, Plaintiff filed a "Motion to Extend Time" in order to respond to Defendants' "Motion to Dismiss Adversary Proceeding." [Doc. #13].

On December 29, 2021, this court granted Plaintiff an extension of time to respond to Defendants' "Motion to Dismiss Adversary Proceeding." [Doc. #14].

On January 10, 2022, Plaintiff filed a "Memorandum in Opposition to Defendants' Motion to Dismiss" and a "Motion for Leave to File an Amended Complaint." [Doc. ##16, 17]. On January 10, 2022, Defendants filed a "Response to Plaintiff's Motion for Leave to File Amended Complaint and Request for Attorney's Fees." [Doc. #18].

On January 18, 2022, this court held a hearing on the parties' respective motions and informed the parties the court would grant Plaintiff's "Motion for Leave to File an Amended Complaint" but would hold the request for attorneys' fees in abeyance. [Doc. #24].

## II.    The Amended Complaint.

On January 19, 2022, Plaintiff filed the Amended Complaint. [Doc. #23].

Plaintiff's Amended Complaint set forth more detailed factual allegations describing the alleged fraud.  Plaintiff's Amended Complaint alleged, for the first time, that at the time of executing the listing agreement, Debtor knew she had to perform certain obligations, that notwithstanding this knowledge, Debtor represented to Plaintiff she would perform under the listing agreement.  The Amended Complaint also alleged that Debtor made this representation or representations with the subjective intent and purpose of deceiving Plaintiff so that Plaintiff would sign the listing agreement and procure a purchaser for the Property. [Doc. #27, ¶¶7-11, 17-18, 24-28].

Plaintiff's Amended Complaint also set forth detailed factual allegations describing the formation of the 858 Revocable Living Trust, without the benefit of counsel, after the state court denied Debtor's motion for reconsideration in the Breach of Contract Lawsuit.

Plaintiff's claim under §523(a)(2)(A) was rephrased, alleging that the Plaintiff's "claim against Defendant as a result of a false pretense, false representation, and/or actual fraud, and

should be excepted from discharge under 11 U.S.C. §523(a)(2)(A)." [Doc. #23, ¶29]. Plaintiff also removed the allegation that Debtor's actions were in violation of Ohio's Uniform Fraudulent Transfer Act.

On February 3, 2022, Defendants filed the Renewed Motion to Dismiss. [Doc. #27]. Defendants Renewed Motion to Dismiss challenges the new allegations of fact in Plaintiff's Amended Complaint, but is otherwise identical to the initial motion to dismiss. [Doc. #10]. Defendants assert that the adversary proceeding should be dismissed because the Amended Complaint fails to plead: 1) allegations of fraud with particularity; under Fed. R. Civ. P. 9(b), 2) that the debt was obtained by fraud; or, 3) that there was an express trust when the contractual debt was incurred. Defendants also assert that the Amended Complaint fails to allege facts that, if accepted as true, sufficiently state a plausible claim because the allegations describe acts that occurred after the debt was incurred and fail to allege facts that the debt was obtained by fraud. Thus, Defendants argue that the claims in the Amended Complaint must be dismissed under Rule 12(b)(6).

On February 14, 2022, Defendants filed an Answer to the Amended Complaint. [Doc. #28].

On February 27, 2022, Plaintiff filed its Response to Defendants' Renewed Motion to Dismiss. [Doc. #29]. Plaintiff's Response argues Defendants' Renewed Motion to Dismiss should be denied because the Amended Complaint alleges facts with particularity that Debtor had no intent to perform under the listing agreement and transferred the Property with knowledge of the damages hearing. Plaintiff relies on *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 356, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016), for the proposition that "actual fraud" includes fraudulent transfers and fraudulent conduct that deal in acts of "concealment and hindrance." Plaintiff then concludes that the Amended Complaint's allegations state a plausible claim under §523(a)(2)(A). [*Id.*, pp. 5-7].

Plaintiff also argues Defendants' Renewed Motion to Dismiss the §523(a)(4) claim should be denied because the Amended Complaint alleges facts that state a plausible claim under §523(a)(4) with particularity. Plaintiff points to the fact that the transfer of the Property was made with no consideration, but with knowledge of the damages hearing. [*Id.*, p. 7]. Plaintiff argues these allegations state a plausible claim under §523(a)(4).

## I.   <u>Legal Standards.</u>

A motion brought by a defendant to dismiss an adversary proceeding is governed by Federal Rule of Civil Procedure 12(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).  Defendants' Renewed Motion to Dismiss is brought under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 809 (6th Cir. 2022)(internal quotation marks omitted)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *accord Middlebrooks v. Parker*, 15 F.4th 784, 789 (6th Cir. 2021).  The complaint is construed in the plaintiff's favor and its well-pleaded factual allegations are accepted as true. *See, Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021).  This court however need not accept as true legal conclusions and unwarranted factual inferences. *Id.*

Although review is normally limited to the complaint, this court may also consider any document attached to a defendant's motion to dismiss "if it is referred to in the complaint and is central to the plaintiff's claim." *Gavitt*, 835 F.3d at 640.  Federal Rule of Civil Procedure 12(d), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b) provides: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Conversion to Rule 56 occurs when a court fails to exclude evidence presented outside the pleadings. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006). For these reasons, this court expressly rejects and excludes Defendants' exhibits, at this stage of the proceeding, to the extent that the exhibits have not been found to fall under an exception to the general rule stated above.

A complaint alleging fraud, like Plaintiff's Amended Complaint, must also clear Federal Rule of Civil Procedure 9(b)'s bar, which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  A plaintiff must "allege the 'who, what, where, when, and why'" of the alleged fraud. *See, Astec Indus.*, 29 F.4th at 812.

8

## II. Plaintiff's Claims for Relief.

Plaintiff's Amended Complaint asserts that its debt should be declared nondischargeable under 11 U.S.C. §523(a). The exceptions to discharge in §523(a) must be narrowly construed to afford the honest but unfortunate debtor a "fresh start." *Pazdzierz v. First Am. Title Ins. Co.* (*In re Pazdzierz*), 718 F.3d 582, 586 (6th Cir. 2013)(quoting *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *Bd. of Trs. v. Bucci* (*In re Bucci*), 493 F.3d 635, 642 (6th Cir. 2007)(citing *Meyers v. IRS* (*In re Meyers*), 196 F.3d 622, 624 (6th Cir. 1999); *XL/Datacomp, Inc. v. Wilson* (*In re Omegas Grp., Inc.*), 16 F.3d 1443, 1452 (6th Cir. 1994)). A creditor must prove a debt is excepted from discharge by a preponderance of the evidence. *Conti v. Arrowood Indem. Co.* (*In re Conti*), 982 F.3d 445, 448 (6th Cir. 2020).

### A. 11 U.S.C. §523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge any debt for money, property, services, or credit to the extent obtained by[4] false pretenses, a false representation, or actual fraud. *See, Kraus Anderson Cap., Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 205 (B.A.P. 6th Cir. 2014). "Under §523(a)(2)(A), 'false representations and false pretenses encompass statements that falsely purport to depict current or past facts.'" *In re Iftiu*, 608 B.R. at 689 (citation omitted). "False pretenses are distinguishable from false representations in that a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation." *Id.* (citation omitted)(internal quotation marks omitted).

"In addition to 'false representation' and 'false pretenses,' the Supreme Court has held that §523(a)(2)(A) also provides a cause of action for 'actual fraud.'" *Id.* (quoting *Husky Int'l Elecs., Inc.*, 578 U.S. at 361); *see also, Sun Fed. Credit Union v. Montague* (*In re Montague*), 2021 WL 2816326 at *4, 2021 Bankr. LEXIS 1787 at *10-11 (Bankr. N.D. Ohio July 6, 2021)(Whipple, J.)(noting that §523(a)(2)(A) "is not limited to excepting from discharge debts arising out of false representations. The concepts of *debts* arising from 'false pretenses' and from schemes involving 'actual fraud' are broader grounds for exception of debts from discharge" (emphasis added)). "Actual fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *In re Iftiu*, 507 B.R. at 689 (quoting *Husky Int'l Elecs., Inc.*, 578 U.S.

---

4/ Enacted in 1984, the Bankruptcy Amendments and Federal Judgeship Act ("BAFJA") added the phrase "to the extent obtained by. . ." to §523(a)(2). *Lowery v. Iftiu* (*In re Iftiu*), 608 B.R. 677, 689 n.13 (Bankr. N.D. Ohio 2019).

at 362).

Accordingly, §523(a)(2)(A) prevents an individual debtor from discharging any debt for money, property, servicers, or an extension, renewal, or refinancing of credit, to the extent obtained by (1) "false pretenses," (2) "a false representation," or (3) "actual fraud."

*1. False Representation; False Pretenses.*

To except a debt from discharge for "a false representation," a plaintiff must prove the following elements of the claim:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
>
> (2) the debtor intended to deceive the creditor;
>
> (3) the creditor justifiably relied on the false representation; and
>
> (4) its reliance was the proximate cause of the loss.

*Rembert v. AT & T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998)(footnote omitted).

Breaching a contract or promise alone cannot be the basis for nondischargeability. *Strait & Lamp Grp. v. Moldovan* (*In re Moldovan*), 636 B.R. 491, 500 (Bankr. S.D. Ohio 2021); *Risk v. Hunter* (*In re Hunter*), 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015)("A broken promise alone will not establish the existence of any intent to deceive."). Instead, the false representation must be one of an existing fact. *In re Hunter*, 535 B.R. at 213. Additionally, to form the basis of a false representation, a debtor-promisor's representation, such as a lack of intent to perform under a contract, must exist at the time the contract was executed. *See, Siebanoller v. Rahrig* (*In re Rahrig*), 373 B.R. 829, 834 (Bankr. N.D. Ohio 2007). "A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's 'course of conduct,' given that direct, express proof of intent is rarely available." *Launder v. Doll* (*In re Doll*), 585 B.R. 446, 455 (Bankr. N.D. Ohio 2018); *see also, In re Rahrig*, 373 B.R. at 834.

False pretenses, on the other hand, can be distinguished from a false representation in that a "false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression," while a false representation involves an express representation. *In re Moldovan*, 636 B.R. at 502 (quoting *Coughlin Chevrolet, Inc. v. Thompson* (*In re Thompson*), 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011)); *accord WLP Cap. Inc. v. Tolliver* (*In re Tolliver*), 2021 WL 6061853 at *17, 2021 Bankr. LEXIS 3463 at *39 (B.A.P. 6th Cir. Dec. 20, 2021).

Accordingly, false pretenses include any intentional fraud or deceit that may be implied from conduct, or concealment when there is a duty to speak, and may consist of acts that, when considered collectively, are purposely calculated and intended to create a false and misleading understanding of a transaction in which a creditor is wrongly induced to extend money, property, services, or credit to the debtor. *See, Fuller v. Givens* (*In re Givens*), 634 B.R. 755, 761-62 (Bankr. E.D. Tenn. 2021); *see also, James v. McCoy* (*In re McCoy*), 114 B.R. 489, 489 (Bankr. S.D. Ohio 1990)("A false pretense has been defined to include a 'mute charade,' where the debtor's conduct is designed to convey an impression without oral representation.").

      i.    Analysis.

To plead a plausible false representation claim, Plaintiff must plead facts supporting the material elements set forth in *Rembert*. Plaintiff's Amended Complaint alleges Plaintiff was awarded a monetary judgment based on the commission Debtor did not pay, and which Plaintiff earned under the listing agreement. Thus, the Amended Complaint alleges a contractual debt.

This particular fact pattern, the failure to pay a commission in a real estate transaction, has been the subject of false representation litigation in several bankruptcy cases. For example, earned but unpaid commissions for services rendered in connection with the sale of property have previously been the subject of a §523(a)(2)(A) claim because the services were allegedly procured by the debtor's false representation in connection with an agreement to pay a commission upon the finding of a ready, willing, and able buyer. *See e.g.*, *Bershadskiy v. Rodeo Realty, Inc.* (*In re Bershadskiy*), 2013 WL 5630631 at *7, 2013 Bankr. LEXIS 4597 at *20 (B.A.P. 9th Cir. Oct. 15, 2013)(affirming the bankruptcy court's order granting summary judgment for creditor-broker); *Massof v. Lages* (*In re Lages*), 386 B.R. 590, 600 (Bankr. W.D. Pa. 2008)(finding that creditor-broker failed to meet its burden at trial in establishing that debtors knowingly made "a false representation" with the intent to deceive because the fraud perpetrated occurred after creditor-broker had completed providing services and the fraud was intended to cheat creditor-broker out of the commission); *Crehan v. Ying Ly* (*In re Ying Ly*), 350 B.R. 757, 759-60 (Bankr. W.D. Mich. 2006)(denying the creditor's motion for reconsideration of the bankruptcy court's order dismissing the adversary proceeding for creditor's failure to meet its burden at trial of proving that debtor's failure to pay the commission under the listing agreement, giving rise to the debt, fell within the exceptions under §523(a)(2)(A)); *Keyes Co. v. Gunn* (*In re Gunn*), 23 B.R. 20, 22 (Bankr. S.D. Fla. 1982).

11

Here, the Amended Complaint alleges that at the time the parties executed the listing agreement, Debtor represented she would convey the Property to a purchaser procured by Plaintiff and Plaintiff would be entitled to a commission for doing so, which in turn allowed Debtor to receive Plaintiff's services. [Doc. #1, ¶¶17, 22]. The Amended Complaint further alleges Debtor made these representations with knowledge they were false because Debtor did not convey the Property to a purchaser procured by Plaintiff or provide Plaintiff with the commission for procuring a purchaser. [*Id.*, ¶¶10, 24-26]. These allegations, if true, establish the first *Rembert* prong, that Debtor obtained services through material misrepresentations that Debtor knew were false.

The Amended Complaint also alleges Debtor allowed and permitted Plaintiff to perform, and continue to perform, under the listing agreement.[5] [*Id.*, ¶¶24-25]. The Amended Complaint further alleges that Debtor had no intent to perform at the time the listing agreement was executed. [*Id.*, ¶10]. Debtor's failure to convey the Property and the refusal to pay the commission prompted the Breach of Contract Lawsuit filed on or about February 2, 2018. Debtor's failure to comply with the listing agreement may indicate a subjective intent to defraud. These allegations establish the second *Rembert* prong, Debtor possessed a subjective intent to deceive Plaintiff.

The Amended Complaint further alleges Plaintiff justifiably relied on Debtor's representations under the listing agreement by actually procuring a ready, willing, and able buyer. [*Id.*, ¶¶8-9, 27]. Lastly, the Amended Complaint alleges Plaintiff was injured in the amount of $19,873.24, not including additional attorney's fees and court costs presumably allowed under the listing agreement. [*Id.*, ¶28]. These allegations satisfy the third and fourth *Rembert* prongs.

Because the Amended Complaint states a plausible claim for a false representation claim under §523(a)(2)(A), the Renewed Motion to Dismiss this claim under Rule 12(b)(6) is denied.

Turning to "false pretenses." To plead a plausible claim for "false pretenses," a plaintiff must illustrate a debtor's intent to deceive the plaintiff, plaintiff's reliance on the "false pretenses," and that the false pretense was the cause of plaintiff's loss. *In re Moldovan*, 636 B.R. at 502.

The facts in the Amended Complaint also allege a plausible claim for "false pretenses."

---

5/ This court has trouble conceiving why the Debtor would execute this type of agreement with the intent to deceive. It is difficult to see the benefit of signing an agreement like the one at issue with the intent to refuse to sell certain property at the time of execution. However, the purpose of a Rule 12(b)(6) motion is to test whether a plaintiff's allegations state a claim for which a court might grant relief. This court may not consider the likelihood that the plaintiff will be able to prove their factual allegations.

12

For example, the Amended Complaint alleges "[b]ased upon the actions of [Debtor], [Debtor] had no intention of performing under the terms of the [listing agreement], and allowed and permitted Plaintiff to perform under the [listing agreement] knowing that [Debtor] had no intention of performing under the [listing agreement]." [Doc. #1, ¶24]. It is alleged that Debtor's actions and omissions created a misleading understanding of the transaction in which Plaintiff performed, and continued to perform, while relying on Debtor's misrepresentations, to Plaintiff's detriment. [*Id.*, ¶¶10, 17, 25-27]. It is also alleged that Debtor's dealings with Plaintiff created a contrived and misleading understanding of the transaction under the listing agreement.

In sum, the Amended Complaint alleges that Plaintiff procured a purchaser for the Property based on Debtor's acts or representations. After procuring a purchaser, Plaintiff learned that Debtor never actually intended to convey the Property and pay Plaintiff its commission. As a result, Plaintiff suffered a loss. [*Id.*, ¶28].

Because the Amended Complaint states a plausible claim for "false pretenses" under §523(a)(2)(A) the Renewed Motion to Dismiss this claim under Rule 12(b)(6) is denied.

ii. Rule 9(b).

The Renewed Motion to Dismiss asserts the Amended Complaint fails to satisfy Rule 9(b), which provides that in alleging fraud, a party must state with particularity the circumstances constituting false pretenses and a false representation. *See, Fabian v. Goss* (*In re Goss*), 605 B.R. 189, 198 (Bankr. S.D. Ohio 2019)("Rule 9(b) indeed applies to §523(a)(2)(A) complaints."); *Sequatchie Mountain Creditors v. Lile*, 585 B.R. 426, 438 (N.D. Ohio 2018)("The pleading requirements of Fed. R. Civ. P. 9(b) are applicable to fraudulent misrepresentation claims under §523(a)(2)(A)."); *Am. Asset Fin., LLC v. Feldman* (*In re Feldman*), 506 B.R. 222, 228 (Bankr. E.D. Pa. 2014)("As false pretenses is a species of fraud, the heightened pleading requirement applicable to fraud claims applies equally." (citation omitted)).

Rule 9(b) generally requires a plaintiff to "(1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *In re Goss*, 605 B.R. at 198 (quoting *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014)). In applying Rule 9(b), this court keeps in mind the liberal pleading approach of Rule 8. *See, Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

Reading Rule 9(b), against the backdrop of Rule 8, makes it clear that the purpose of Rule

13

9 is not to reintroduce formalities to pleadings. Rather the purpose behind Rule 9(b) is to provide "defendants with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007). Accordingly, Rule 9(b) aims to ensure defendants have sufficient information to respond to an allegation of fraud. *See, id.* at 503 n.11; *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016). If a complaint's allegations provide a defendant with sufficient information to respond in a meaningful and informed manner, then "it will be deemed to sufficiently plead the 'time, place, and content of the alleged misrepresentation.'" *Stoner v. Keirns* (*In re Keirns*), 628 B.R. 911, 919 (Bankr. S.D. Ohio 2021)(quoting *Kettering Health Network*, 816 F.3d at 408).

Plaintiff's Amended Complaint has pled its claims under §523(a)(2)(A) for false pretenses and a false representation with sufficient particularity to satisfy Rule 9(b). Plaintiff alleges who made the misrepresentations: the Debtor. Plaintiff alleges the misrepresentation was Debtor's false representations and omissions related to Debtor's intent to perform under the listing agreement, which included that Debtor would convey the Property upon Plaintiff procuring a purchaser, entitling Plaintiff to a commission. Plaintiff sets forth when, where, and how the misrepresentations were made by alleging Debtor made the misrepresentations under the listing agreement at the time of signing. Further, it is alleged that while Plaintiff was procuring a purchaser, Debtor knew these representations were false, that Plaintiff justifiably relied on Debtor's representations, and that Debtor caused Plaintiff damages.

These allegations meet the heightened pleading requirement for claims alleging fraud by specifying the "who, what, when, where, and how." Additionally, these allegations identify Debtor's fraudulent conduct, fraudulent intent, and describe the injury resulting from the fraudulent conduct. Finally, these allegations are detailed enough to provide Debtor with enough information to meaningfully defend and respond to the specific allegations of Debtor's misrepresentations. *See, United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)("So long as a relator pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met."). Thus, the Renewed Motion to Dismiss these claims under Rule 9(b) is denied.

### 2. Actual Fraud.

"'Actual fraud' has two parts: actual and fraud." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 360, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016). This "actual fraud" prong "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 359; *see also, id.* at 362 ("[A] false representation has never been a required element of 'actual fraud[.]'"); *accord McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000); *In re Iftiu*, 608 B.R. at 689.

The word "actual," in the context of common-law fraud, denotes any fraud that involves moral turpitude or intentional wrong. *Husky*, 578 U.S. at 360 (quoting *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1878)); *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(holding that the word "fraud" contains the elements ascribed to it at common law). The word "fraud" encompasses all the multifarious means that human ingenuity can design to gain an advantage over another, making a rigid and precise definition not only useless, but essentially unworkable. *See, Husky*, 578 U.S. at 360. *See also, In re Hunter*, 535 B.R. at 213. Accordingly, anything that counts as "fraud" and that is done with wrongful intent is "actual fraud." *Husky*, 578 U.S. at 360.

"Actual fraud" is broadly defined and includes any deceit, artifice, trick, or design involving a direct and active operation of the mind, used to circumvent and cheat another. *Sun Fed. Credit Union v. Montague* (*In re Montague*), 2021 WL 2816326 at *4, 2021 Bankr. LEXIS 1787 at *11 (Bankr. N.D. Ohio July 6, 2021)(Whipple, J.); *Mellon Bank, N.A. v. Vitanovich* (*In re Vitanovich*), 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001); 4 Collier on Bankruptcy ¶523.08[1][e] (16th ed. 2022). Thus, "actual fraud," requires an intent to deceive or defraud. *See, Husky*, 578 U.S. at 360. *See also, In re Hunter*, 535 at 213 (quoting *Gerad v. Cole* (*In re Cole*), 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)).

The analysis here must be taken step-by-step. The determination of the "debt" owed to Plaintiff must be kept analytically separate from whether, and to what extent, that specific "debt" is nondischargeable under §523(a)(2)(A)'s "actual fraud" prong.

### i. Analysis.

Determining the dischargeability of a debt involves two inquires: (1) the establishment of a valid prepetition debt owed by the debtor under applicable non-bankruptcy law; and (2) a determination whether the debt is nondischargeable under §523(a). *Kyle-Wolf v. McClure* (*In re*

*McClure*), 625 B.R. 733, 738 (Bankr. C.D. Ill. 2021); *Lawson v. Conley* (*In re Conley*), 482 B.R. 191, 207 (Bankr. S.D. Ohio 2012).   The inquiries are necessarily distinct. *Grogan v. Garner*, 498 U.S. 279, 283-84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(holding that the validity of a creditor's claim is generally determined under rules of state law, but the issue of nondischargeability is a matter of federal law governed by the Bankruptcy Code).

   a. Is There a Prepetition Debt Owed by the Debtor under Applicable Non-bankruptcy Law?

   Prior to a debt being determined to be nondischargeable under any discharge exception, a creditor must first show the existence of an enforceable debt under applicable non-bankruptcy law. *In re Conley*, 482 B.R. at 207.  In many cases, a bankruptcy court is never tasked with making this determination because the debt has been liquidated, *i.e.*, by judgment, prior to the debtor filing bankruptcy. *Fed. Ins. Co. v. Courtney* (*In re Courtney*), 596 B.R. 645, 654 (Bankr. S.D. Ohio 2019).

   Here, we have the Judgment that was entered by the state court prior to the Debtor filing bankruptcy.  On October 3, 2019, Plaintiff was awarded $19,873.23.  This "debt" of $19,873.23 appears to have been liquidated.  Federal law generally provides that state court judgments are to be afforded claim preclusive effect in federal courts. 28 U.S.C. §1738.  Therefore, the Judgment affords the Plaintiff a "claim."

   But there is a difference here.  Looking at the Amended Complaint's request for relief shows Plaintiff is not asking this court to declare the Judgment nondischargeable for "actual fraud."  The relief requested in the Amended Complaint is the "entry of a money judgment against Defendant in an amount to be determined at trial, plus accrued interest at the contractual rate from and after September 9, 2019, up until the date of the judgment, and for interest allowed at the statutory rate for relief." [Doc. #23, p. 8].  Accordingly, Plaintiff is asking this court to establish a debt that is separate and independent from the Judgment, and then enter a money judgment on this separate debt for Debtor's alleged fraudulent transfer[6] on or about September 9, 2019.

   Bankruptcy courts can render money judgments.  "Bankruptcy courts retain 'jurisdiction to adjudge the validity and amount of a claim'" when determining dischargeability. *Gambrell v.*

---

6/  Debtor filed the petition for relief during the Fraudulent Transfer Lawsuit.  The filing of the petition stayed the proceedings.  The Fraudulent Transfer Lawsuit remains pending.  Neither party has argued that abstention would be appropriate to allow the Fraudulent Transfer Lawsuit to proceed in state court. However, the Supreme Court has indicated "abstention may be raised by the court Sua sponte." *Bellotti v. Baird*, 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 2864 n.10, 49 L.Ed.2d 844 (1976)(capitalization in original).

*Auerbach* (*In re Auerbach*), 2015 WL 6601776 at *4, 2015 Bankr. LEXIS 3676 at *12 (Bankr. N.D. Ohio Oct. 29, 2015)(citing *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 965 (6th Cir. 1993); *Hart v. S. Heritage Bank* (*In re Hart*), 564 F. App'x 773 (6th Cir. 2014)); *accord Stoner v. Keirns* (*In re Keirns*), 628 B.R. 911, 914-15 (Bankr. S.D. Ohio 2021). This court must look to state law to determine the validity and fix the amount of Plaintiff's claim against Debtor. *See, Grogan*, 498 U.S. at 283 (distinguishing between creditor's burden to prove validity of a claim and nondischargeability). Here, the appropriate state law is that of Ohio. Thus, this court must determine if Plaintiff has a claim under Ohio law against the Debtor, separate and apart from the prior Judgment.

Plaintiff has not cited any statute in the Amended Complaint that would entitle Plaintiff to monetary relief.[7] However, the "form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Palazzola v. City of Toledo* (*In re Palazzola*), 2011 WL 3667624 at *8, 2011 Bankr. LEXIS 3225 at *22 (Bankr. N.D. Ohio Aug. 22, 2011)(quoting *Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003)); *In re Gumpher*, 2017 WL 187547 at *3 (Bankr. N.D. Ohio Jan. 17, 2017). The "purpose of the complaint is to plead facts not law" that would support the claim and the relief requested. *Blackmar v. Cafferty* (*In re Blackmar*), 2021 WL 2604665 at *2, 2021 Bankr. LEXIS 1694 at *5 (Bankr. N.D. Ohio June 24, 2021). Accordingly, "where Plaintiff[ ] ha[s] failed to cite the relevant statute or an incorrect statute is cited, the court must only review Plaintiff['s] allegations to determine whether they allege sufficient facts to state a claim for relief under some viable legal theory." *Id.* (alterations in original)(quoting *In re Palazolla*, 2011 WL 3667624 at *8). Failing to correctly categorize the legal theory giving rise to the claim is generally not material. Fed. R. Civ. P. 8(a). This principle only applies to relief requested, and does not apply to any relief not requested, such as denial of discharge.

The Amended Complaint alleges that Debtor "intentionally transferred title to the Property with knowledge that summary judgment had been awarded to Plaintiff on May 23, 2019." [Doc. #23, ¶12]. The Amended Complaint further alleges Debtor "did, with knowledge of the summary judgment awarded in favor of Plaintiff, intentionally, maliciously and fraudulently transfer title to

---

7/ Plaintiff's initial complaint alleged Debtor's actions violated "Ohio Rev. Code §1336.07," Ohio's Uniform Fraudulent Transfer Act. [Doc. #1, ¶19]. Plaintiff's Amended Complaint removed any reference to Ohio's Uniform Fraudulent Transfer Act.

the Property to her Trust on September 9, 2019, with intent to hinder, delay or defraud Plaintiff from executing on any subsequently awarded judgment." [*Id.*, ¶23].

A fraudulent transfer cause of action is usually a collection action, but, in some cases, a fraudulent transfer is a claim itself, based on statutorily-defined elements. *See, Vancrest Mgmt. Corp. v. Mullenhour*, 140 N.E.3d 1051, 1064 (Ohio Ct. App. 2019). Under Ohio law, a creditor has a fraudulent transfer claim against a debtor for actual fraud whenever "the debtor had the actual intent to defraud the creditor by transferring assets." *Youngstown Osteopathic Hosp. Ass'n v. Pathways Ctr. for Geriatric Psychiatry, Inc.* (*In re Youngstown Osteopathic Hosp. Ass'n*), 280 B.R. 400, 409 (Bankr. N.D. Ohio 2002)(citing Ohio Rev. Code Ann. §1336.04(A)(1)). "Intent must be established by clear and convincing evidence." *R & G Nursing Care, Inc. v. Hrivnak* (*In re Hrivnak*), 2018 WL 1115204 at *3, 2018 Bankr. LEXIS 559 at *7 (Bankr. N.D. Ohio Feb. 27, 2018); *see also, Bash v. Textron Fin. Corp.* (*In re Fair Fin. Co.*), 2018 WL 1069443 at *8, 2018 Bankr. LEXIS 495 at *23 (Bankr. N.D. Ohio Feb. 23, 2018)(noting this "clear and convincing" standard "appears to be the majority view"), *report accepted sub nom. Bash v. Textron Fin. Corp.*, 592 B.R. 819 (N.D. Ohio 2018).

Accordingly, under Ohio law, fraudulent transfer can be a distinct cause of action, at least in the case of actual fraud. *See e.g., In re Hrivnak*, 2018 WL 1115204 at *4, 2018 Bankr. LEXIS 559 at *10 (recognizing fraudulent transfer under Ohio law as a distinct claim); *White v. Molnar Tr.*, 2022 WL 2112113 at *8, 2022 Ohio App. LEXIS 1851 at *22 (Ohio Ct. App. June 10, 2022)(noting appellees "demonstrated an underlying tort, fraudulent transfer," supporting their civil conspiracy claim); *Aristocrat Lakewood Nursing Home v. Mayne*, 729 N.E.2d 768, 782 (Ohio Ct. App. 1999)(noting that a creditor setting aside a fraudulent conveyance, in appropriate cases, "may recover compensatory damages, in addition to punitive damages and attorney fees"); *Profeta v. Lombardo*, 600 N.E.2d 360, 363 (Ohio Ct. App. 1991)(holding that the "trial court had discretion to grant the $5,000 money judgment under" Ohio's Uniform Fraudulent Transfer Act).

Plaintiff has alleged Debtor made a transfer on the eve of the Judgment, with actual intent to defraud Plaintiff. Plaintiff has also alleged some of the "badges of fraud" supporting intent to defraud. Thus what is alleged are facts that would support a claim for monetary damages arising from allegations of fraud.

"The amount of damages recoverable will depend on the facts of each case and what is necessary to compensate the creditor for harm flowing from the fraud." *Blood v. Nofzinger*, 834

N.E.2d 358, 372 (Ohio App. 6th Dist. 2005). Here, Plaintiff alleges harm flowing from Plaintiff's inability to collect.[8] Plaintiff contends that post-judgment interest and the costs of seeking to avoid the transfer in state court are chargeable to Debtor, and requests a money judgment "against Defendant in an amount to be determined at trial, plus accrued interest at the contractual rate from and after September 9, 2019, up until the date of the judgment, and for interest allowed at the statutory rate for relief." [Doc. #23, p. 8]; *see also,* [*Id.* ¶28]. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). At this point, Plaintiff has not quantified this amount, but it has stated a "claim" under applicable non-bankruptcy law.

In sum, claim preclusion applies to the liquidated amount in the Judgment. But preclusion does not apply to any separate debt for the fraudulent transfer to avoid collection of the Judgment. *See, Blood*, 834 N.E.2d at 366 ("Litigation that resulted in a judgment and created a judgment-creditor/judgment-debtor relationship is not res judicata as to a subsequent claim that the debtor fraudulently transferred property to avoid paying the judgment."). The fraudulent transfer can give rise to a debt that can be distinct from the predicate debt (here, the Judgment), and a finding that the predicate debt is dischargeable does not mean that the debt arising from the fraudulent transfer is dischargeable.

b. Does the Amended Complaint State a Plausible Claim That This Debt for the Fraudulent Transfer under Applicable Non-bankruptcy Law Is Nondischargeable?

Having determined that Plaintiff has stated a plausible claim that Plaintiff is entitled to a money judgment against Defendants, this court must next determine whether the Plaintiff has alleged a plausible claim that this claim is nondischargeable.

To plead a plausible claim for "actual fraud," a plaintiff must illustrate a debtor's intentional engagement in fraud, such as a fraudulent transfer scheme, intended to defraud a plaintiff of property or a legal right. *See, Meade v. Pinkerman* (*In re Alwood*), 531 B.R. 182, 188 (Bankr. N.D. Ohio 2015); *Guardian Fin. Co. v. Metzger* (*In re Metzger*), 2018 WL 6985674 at *5, 2018 Bankr. LEXIS 3335 at *14 (Bankr. S.D. Ohio Sept. 4, 2018).

The Amended Complaint alleges Debtor transferred title to the Property to prevent Plaintiff from executing on any subsequently awarded judgment. [Doc. #23, ¶23]. Thus, Plaintiff's

---

8/ As the *Aristocrat* decision explained, a "person injured by fraud is entitled to damages." 729 N.E.2d at 783. The "clear and convincing evidence" standard applies to proving both the existence of an actual fraudulent transfer "and sufficient actual malice to recover punitive damages." *Id.* at 784 n.23. On the other hand, the "'preponderance of the evidence' standard applies to proving the existence and amount of compensatory damages." *Id.*

21-03058-jpg    Doc 30    FILED 09/28/22    ENTERED 09/28/22 17:02:12    Page 19 of 27

Amended Complaint alleges facts that could constitute "actual fraud."

Taking the allegations in the Amended Complaint as true, Debtor transferred the Property with intent to hinder, delay, or defraud Plaintiff in its collection of the Judgment. [*Id.*, ¶¶11-17, 23]. "Under Ohio law, a judgment lien in real property arises from the time a certificate of judgment is recorded in a county where a judgment debtor owns real property." *Norton v. Wilson* (*In re Wilson*), 2017 WL 1628878 at *7, 2017 Bankr. LEXIS 1176 at *21-22 (Bankr. N.D. Ohio May 1, 2017). When Plaintiff requested the certificate of judgment to file a judgment lien on the Property on or around October 9, 2019, Debtor had previously transferred the Property to the 858 Revocable Living Trust on September 9, 2019. Under Ohio law, Plaintiff's judgment lien would not attach to the Property because it had been transferred out of Debtor's personal name. The timing of the transfer raises an "obvious suspicion of fraudulent intent and an effort to thwart Plaintiff's recovery." *Id.*; Restatement (Second) Torts §871 cmt. e (1979)("Transactions in which possession or title has been obtained by fraud are voidable at the option of the defrauded party."). Thus, accepting the allegations as true, Debtor transferred the Property with fraudulent intent to prevent attachment of the judgment lien.[9]

Defendants argue the Judgment was based on a breach of contract, not fraud, and "Plaintiff's displeasure with the transfer of the [Property] *after* the debt was incurred" does not state a plausible claim for relief under Rule 12(b)(6). [Doc. #27, p. 6](emphasis in original). While the Judgment is for breach of contract, this court must apply Ohio law to determine whether the fraudulent transfer can serve as an independent basis for a §523(a)(2)(A) claim. *See e.g., Trilogy Health Servs., LLC v. White* (*In re White*), 599 B.R. 14, 20 (Bankr. S.D. Ohio 2019)("[A] fraudulent transfer can serve as the basis for a §523(a)(2)(A) claim."). Moreover, in *Husky*, the Supreme Court rejected Defendants' argument. 578 U.S. at 364-66. A debt for actual fraud does not require the predicate debt or underlying debt (here, the Judgment is the original liability) to stem from fraudulent conduct. *See, id.*

---

9/ However, the court in *Wilson* recognized that the ability to avoid a judgment lien in its entirety "blunts potential fraudulent intent" for a possible fraudulent transfer claim. *In re Wilson*, 2017 WL 1628878 at *8. Had the judgment lien attached to the property in *Wilson*, the debtor in that case would have been entitled to claim the full value of his interest in the property as exempt. *Id.* The debtor would have been able to avoid the judgment in its entirety in the underlying Chapter 7 case under 11 U.S.C. §522(f), which provided that a debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a judicial lien[.]" *In re Wilson*, 2017 WL 1628878 at *8 n.4 (quoting 11 U.S.C. §522(f)(1)(A)).

Put differently, a debt for failing to pay for goods or services is usually an ordinary contractual debt that will generally be dischargeable. However, a fraudulent transfer, based on actual fraud, can create a separate debt. This separate debt may consist of monetary damages for participating and receiving assets in a fraudulent transfer that hinders, delays, or defrauds a creditor from collecting on an original liability, e.g., a contractual debt. *Husky*, 578 U.S. at 364-66; *McClellan*, 217 F.3d at 895 ("The debt that McClellan is seeking to collect from her (and prevent her from discharging) arises by operation of law *from her fraud*." (emphasis in original)); *Sauer Inc. v. Lawson* (*In re Lawson*), 791 F.3d 214, 219 (1st Cir. 2015)(agreeing with *McClellan* and noting that the Restatement (Second) Torts §871 identifies fraudulent transfers as a type of fraud that extends beyond misrepresentations).

The Amended Complaint also alleges Defendants obtained property. "Although taking an arguably more expansive view of §523(a)(2), the Supreme Court in *Husky* did not actually eliminate the 'obtained by' requirement of the statute." *In re Wilson*, 2017 WL 1628878 at *8, 2017 Bankr. LEXIS 1176 at *27. The preamble to §523(a)(2)(A) states that this exception to discharge applies to any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by" the specified misconduct.[10]

Here, the Amended Complaint alleges a fraudulent transfer. The Amended Complaint alleges Debtor, as a transferor, participated in the fraudulent transfer by transferring the Property to herself as Trustee of the 858 Revocable Living Trust. [Doc. #27, ¶16]. Thus, Debtor was the transferor.

The terms of the 858 Revocable Living Trust provided that during Debtor's lifetime, the Trustee will hold, manage, and administer the Property for the benefit of the Debtor. [Doc. #10-3, p. 2]. The terms of the 858 Revocable Living Trust further provided that upon death of the Debtor the trustee shall hold, administer, and dispose of the Property by granting the Property to Bryce Alex Nadeau. [*Id.*, pp. 2-3]. Thus, after the transfer, Debtor and Bryce Alex Nadeau were

---

10/ The Supreme Court in *Husky* explained:

> [T]he recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtain[n]" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargeable under §523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under §523(a)(2)(A).

578 U.S. at 365 (second alteration in original)(citations omitted).

beneficiaries, and each had an equitable interest in the Property.

Debtor's transfer modified the relationship and the rights Debtor had in the Property. Post-transfer, the judgment lien could not attach to Debtor's possessory interest.[11] Accepting the factual allegations in the Amended Complaint as true, the reason for the transfer was to prevent Plaintiff from encumbering the Property with a judgment lien to secure payment.

At this stage of the proceedings, the court finds it is plausible that this fraudulent transfer allowed Debtor to obtain the benefit of maintaining the Property free from Plaintiff's judgment lien.

In short, the Amended Complaint alleges a debt to Plaintiff based upon Debtor hindering Plaintiff's ability to collect with intent to defraud allowing the Debtor to receive the benefit of maintaining the Property free from any judgment lien filed by the Plaintiff. Thus, the Amended Complaints alleges facts that the debt that Debtor incurred to Plaintiff was for obtaining property by actual fraud.

Because the Amended Complaint states a plausible claim for "actual fraud" under §523(a)(2)(A) the Renewed Motion to Dismiss this claim under Rule 12(b)(6) is denied.

    ii.   Rule 9(b).

Plaintiff alleges Debtor participated in a fraudulent transfer that constitutes "actual fraud."[12] Although reliance on a misrepresentation is not a required element in "actual fraud" for

---

11/ There is a split of authority relative to whether a transfer is illusory because the assets so transferred remained subject to the claims of the transferor's creditors. *Compare Roberts v. Harris* (*In re Harris*), 101 B.R 210, 216 (Bankr. E.D. Cal. 1989)(transfer to self-settled irrevocable trust, in which debtors were the sole settlors, trustee, and beneficiaries, was illusory; consequently, there was no transfer) *and In re Bernard*, 96 F.3d 1279, 1283 (9th Cir. 1996)(O'Scannlain, J., dissenting)(citing *Harris* for proposition that a transfer that does not reduce assets available to creditors is not a "transfer" under the Bankruptcy Code, a view that was rejected by the majority), *with Wiswall v. Wallaert* (*In re Wallaert*), 149 B.R. 665, 668 (Bankr. W.D. Wash. 1992)(rejecting *Harris* and concluding the transfer to self-settled living trust, where debtors were grantors, trustees, and lifetime beneficiaries, was a "transfer"). There is also authority that the definition of "transfer" is broad enough to include within its scope a transfer that "modifies the form" of property transferred. 2 Collier on Bankruptcy ¶101.54[1] (16th ed. 2022)(citation omitted).

12/ It is worth noting that the Sixth Circuit has not yet addressed whether the particularity requirement of Rule 9(b) applies to fraudulent transfer claims in a published opinion. *Gold v. Winget* (*In re NM Holdings Co., LLC*), 407 B.R. 232, 259 (Bankr. E.D. Mich. 2009)(citing 11 U.S.C. §548(a)(1)(A)). The majority of courts that have addressed the issue have concluded that Rule 9(b) applies to fraudulent transfers that require an intent to defraud. *See e.g.*, *Life Partners Creditors' Tr. v. Cowley* (*In re Life Partners Holdings, Inc.*), 926 F.3d 103, 118 (5th Cir. 2019)("[W]e observe that at least three other circuits—the First, Second, and Eighth Circuits—have concluded that Rule 9(b) applies [to an actual fraudulent transfer claim under state law]."); *Karvits v. Summersett* (*In re Great Lakes Comnet, Inc.*), 588 B.R. 1, 21 (Bankr. W.D. Mich. 2018)("The majority of courts have concluded that Rule 9(b) is applicable to claims for actual fraudulent transfers[.]")(citing 11 U.S.C. §§544(b) and 548). As noted by the Fifth Circuit in *In re Life Partners Holdings, Inc.*, the Sixth Circuit has held, in an unpublished decision, that Rule 9(b) applies to an actual fraudulent transfer claim. *Nw. Nat. Ins. Co. of Milwaukee. v. Joslyn*, 1995 WL 270995 at *1, 3-4, 1995 U.S.

purposes of a fraudulent transfer under §523(a)(2)(A), intent to defraud the creditor is required. *In re Moldovan*, 636 B.R. at 503.

Accordingly, Plaintiff must plead the circumstances constituting "actual fraud" with particularity to comply with Rule 9(b). *See, id.*; *In re Metzger*, 2018 WL 6985674 at *5, 2018 Bankr. LEXIS 3335 at *14; *see also, Joslyn*, 1995 WL 270995 at *3 ("We find that the date on which an alleged fraud occurred is a 'circumstance' of the fraud that should be pled with particularity[.]"). Based on the purpose of Rule 9(b)'s requirement that a defendant be given sufficient information to meaningfully respond to the allegations of fraud, a complaint must allege the "who, what, when, where, and how" of the "actual fraud" to comply with Rule 9(b). *In re Moldovan*, 636 B.R. at 503 (citation omitted).

Plaintiff's Amended Complaint has pled the claim under §523(a)(2)(A) for "actual fraud" with sufficient particularity to satisfy Rule 9(b). The Amended Complaint identifies the transfer, the date of the transfer, and the property transferred. The Amended Complaint further alleges the transfer was made without consideration with the intent to defraud Plaintiff. Accordingly, these allegations meet the heightened pleading requirement for claims alleging fraud by specifying the "who, what, when, where, and how" and provide Defendants with enough information to meaningfully defend and respond to the specific allegations of "actual fraud."[13]

Defendants argue Plaintiff's Amended Complaint does not allege "facts with regards to

---

App. LEXIS 10499 at *3, 8-10 (6th Cir. May 8, 1995). Moreover, the Fraudulent Transfer Lawsuit was brought under Ohio's Uniform Fraudulent Transfer Act. [Doc. #27, ¶17]. In *Van-Am. Ins. Co. v. Schiappa*, the court held Rule 9(b) applies to allegations that transfers "were made with actual intent to hinder, delay, or defraud" creditors despite the claim being made under the Ohio Uniform Fraudulent Transfer Act. 191 F.R.D. 537, 543 (S.D. Ohio 2000)(applying substantive law of the state in a diversity action).

13/ Courts in the Sixth Circuit have held a defendant's ability to prepare and file an answer to a plaintiff's complaint, despite a defendant's assertion that the allegations did not plead the circumstances constituting fraud with particularity as required by Rule 9(b), militates against dismissal under Rule 9(b). *See e.g., Bell v. Nat'l Safety Assocs., Inc.*, 1993 WL 1367438 at *10, 1993 U.S. Dist. LEXIS 21302 at *40 (S.D. Ohio Oct. 4, 1993); *GMAC Real Est. LLC. v. Prindle Real Est., Inc.*, 2007 WL 4570578 at *1, 2007 U.S. Dist. LEXIS 95610 at *3 (S.D. Ohio Dec. 24, 2007)("Plaintiff first correctly contends that Defendants' filing of their answer is evidence that Plaintiff's claim of fraud is pleaded with adequate particularity."); *All Com. Floors, Inc. v. Com. Floor Prod., LLC*, 2019 WL 330880 at *7, 2019 U.S. Dist. LEXIS 12388 at *23-24 (M.D. Tenn. Jan. 25, 2019). Defendants have prepared not one but two answers, which are responsive pleadings, to Plaintiff's allegations of fraud. [Doc. ##12, 28]. Given Rule 9(b)'s broad purpose, and the fact that Defendants have already answered Plaintiff's allegations of fraud, this also factors in finding that the allegations provide at least the minimum degree of detail necessary to allow Defendants to prepare and mount a competent defense. This same principle applies to Defendants' Renewed Motion to Dismiss Plaintiff's claims for false representation and false pretenses.

21-03058-jpg    Doc 30    FILED 09/28/22    ENTERED 09/28/22 17:02:12    Page 23 of 27

any debt *obtained* by" fraudulent means.[14] [Doc. #27, p. 3](emphasis in original). Essentially, Defendants' Renewed Motion appears to argue that the Amended Complaint fails to plead allegations of fraud with particularity because the allegations describe a purported fraudulent transfer that happened after the debt was incurred, [*Id*., p. 4], and confuses "the transfer of the [Property] with fraud in incurring the debt." [*Id*.]. Defendants, in concluding that Plaintiff's claim under §523(a)(2)(A) must be dismissed for failing to allege fraud with particularity, state the debt is for a breach of contract, not fraud, and "a fraudulent transfer under bankruptcy law is utterly different from *incurring* a debt" for fraud. [*Id*.](emphasis in original).[15]

Defendants' argument that Plaintiff is somehow precluded from raising allegations of fraud because the Judgment is for breaching a contract must be rejected. Fraud, or wrongful intent, is generally not an element of a breach-of-contract action. Thus, the issue of wrongful intent is not precluded in this proceeding because that issue was not necessary to that action resulting in the Judgment. *Long v. Piercy* (*In re Piercy*), 21 F.4th 909, 926 (6th Cir. 2021). Additionally, as discussed above, allegations of a transfer intended to defraud a creditor can create a separate debt that may state a plausible claim for "actual fraud." Thus, the Renewed Motion to Dismiss this claim under Rule 9(b) is denied.

## B. 11 U.S.C. §523(a)(4).

The exception to discharge under 11 U.S.C. §523(a)(4) prohibits the "discharge of 'any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." *In re Piercy*, 21 F.4th at 919. This section contains two prongs. One for fraud or defalcation while acting in a fiduciary capacity. *Id.* Another for embezzlement or larceny while acting in any capacity. *Id.* The Amended Complaint does not allege embezzlement or larceny.

"A defalcation under the fraud or defalcation while acting in a fiduciary capacity prong of §523(a)(4) encompasses not only embezzlement and misappropriation by a fiduciary, but also the failure to properly account for such funds." *Id.* (internal quotation marks omitted)(citation

---

14/ Defendants' argument in its Renewed Motion to Dismiss appears to use "fraud" and "false pretenses" interchangeably. This court addresses this argument challenging the alleged fraudulent transfer as applicable to "actual fraud."

15/ Defendants are correct with respect to the proposition that there must be "fraud in incurring a debt." [*Id*.]. However, in certain cases, a debtor who knowingly colluded on an actually fraudulent transfer may incur a separate nondischargeable debt. *In re Wilson*, 2017 WL 1628878 at *8 (citing *McClellan*). Here, there are potentially two debts. The first debt is the award of contract damages against the Debtor liquidated by the state court. The second debt plausibly alleged is for the fraudulent transfer to thwart Plaintiff's recovery.

24

omitted). "Defalcation" under this prong requires "a showing of gross recklessness." *Id.* (citing *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269, 275, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013)). "The 'fraud' required under §523(a)(4) is 'fraud in fact, involving moral turpitude or *intentional* wrong.'" *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007)(emphasis in original).

To except a debt from discharge for fraud or defalcation "while acting in a fiduciary capacity," the creditor "must establish '(1) a preexisting fiduciary relationship, (2) a breach of that fiduciary relationship, and (3) a resulting loss.'" *In re Piercy*, 21 F.4th at 926 (quoting *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci* (*In re Bucci*), 493 F.3d 635, 639 (6th Cir. 2007)). The term "fiduciary capacity" is narrowly construed and covers only "express" or "technical trusts" and does not include trusts arising out of the very act of wrongdoing. *Id.* ("Constructive trusts or resulting trusts . . . do not satisfy the 'fiduciary capacity' requirement." (citation omitted)). An "express" or "technical trust" is established by a plaintiff "demonstrating '(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary.'" *Id.* (citation omitted). The scope of "fiduciary capacity" is ultimately governed by federal law, but state law is considered in the inquiry. *See, id.*; *see also, Johnstone Supply of Detroit v. Rooks* (*In re Rooks*), 2017 WL 4404272 at *9, 2017 Bankr. LEXIS 3283 at *22 (Bankr. N.D. Ohio Sep. 28, 2017)("While the existence of a fiduciary relationship for purposes of §523(a)(4) is determined by federal law, the determination of whether an express or technical trust exists is governed by state law[.]" (citations omitted)).

    *1. Analysis.*

To state a claim under §523(a)(4), the Amended Complaint must allege the existence of an "express" or "technical trust." *In re Piercy*, 21 F.4th at 926. The issue here is whether there was a preexisting fiduciary relationship between the parties. *See, id.*

The Amended Complaint for this claim alleges the existence of an express trust and a transfer to evade payment of a separate contractual debt.[16] However, the type of "debt created while acting in a fiduciary capacity is a special debt, created by a breach of trust obligations defined

---

16/ To the extent Plaintiff alleges Debtor's transfer of the Property created a constructive trust, binding precedent forecloses such a legal theory. The Sixth Circuit has determined that "fiduciary capacity" in §523(a)(4) is "limited only to those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Commonwealth Land Title Co. v. Blaszak* (*In re Blaszak*), 397 F.3d 386, 391 (6th Cir. 2005)(citation omitted). Constructive or resulting trusts, which arise ex maleficio (at the time the wrong is done), do not satisfy §523(a)(4)'s "fiduciary capacity" requirement. *Id.*

by law, and is separate and distinct from any underlying contractual debt which arises from a bankrupt's agreement with respect to goods or services." *Carlisle Cashway, Inc. v. Johnson* (*In re Johnson*), 691 F.2d 249, 251 (6th Cir. 1982). The debt then, for purposes of §523(a)(4), must arise from breach of trust obligations defined by law. *Id.*

A "statute may create a trust for purposes of §523(a)(4) if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing." *In re Bucci*, 493 F.3d at 640. A client generally does not owe a fiduciary duty to a broker. The relationship is usually the other way around, and it has been held real estate agents and brokers owe fiduciary duties to their clients. *See e.g., Levert-Hill v. Assoc. Holding Grp., L.L.C.*, 975 N.E.2d 575, 581 (Ohio Ct. App. 2012)("Real estate agents and brokers owe fiduciary duties to their clients."). The Amended Complaint fails to allege any facts that that the Debtor (as a "client") owed a fiduciary duty to the Plaintiff (as a "broker"). Nor does the Amended Complaint allege facts that Plaintiff was a beneficiary, or that Plaintiff was owed a fiduciary duty, under the 858 Revocable Living Trust.

Similarly, the Amended Complaint fails to allege the debt arose from a breach of trust obligations. For example, the Amended Complaint alleges the act, consisting of fraudulently transferring the Property to the 858 Revocable Living Trust, constitutes "fraud or defalcation while acting in a fiduciary capacity." [Doc. #27, ¶34]. "However, mere allegations of wrongdoing by an alleged fiduciary is insufficient." *Ellsworth v. Carmichael* (*In re Carmichael*), 2018 WL 4201750 at *8, 2018 Bankr. LEXIS 2413 at *25 (Bankr. E.D. Tenn. Aug. 14, 2018). A claim by a plaintiff alleging a fraudulent transfer involving an express or technical trust, without more, does not establish a debt "for fraud or defalcation while acting in a fiduciary capacity." §523(a)(4).

In short, Plaintiff's Amended Complaint fails to allege facts that show Plaintiff was owed a preexisting fiduciary duty. Since the Amended Complaint does not allege facts that, if taken as true, state a plausible claim under §523(a)(4), the Renewed Motion to Dismiss this claim will be granted.

Because this claim is dismissed, this court need not analyze the claim under Rule 9(b).

## CONCLUSION

For the reasons explained above, the Renewed Motion to Dismiss is granted in part and denied in part.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendants' Renewed Motion to Dismiss be, and hereby is, **GRANTED,** as to Plaintiff's Second Cause of Action in its Amended Complaint.

**IT IS FURTHER ORDERED** that Defendants' Renewed Motion to Dismiss be, and hereby is, **DENIED,** as to Plaintiff's First Cause of Action in its Amended Complaint.