

Dated: November 21 2024

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No: 21-31239 |
| | ) | |
| Teresa Nadeau, | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | Adv. Pro. No. 21-03058 |
| | ) | |
| The Danberry Co. Realtors, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff(s), | ) | |
| v. | ) | |
| | ) | |
| Teresa Nadeau, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

### MEMORANDUM OF DECISION

This cause comes before the court after trial on Plaintiff's Amended Complaint to determine dischargeability of a debt owed to The Danberry Co. Realtors ("Danberry") by Defendant Teresa Nadeau, the Debtor in the underlying Chapter 7 case. Plaintiff had alleged that

the debt[1] should be excepted from discharge under both 11 U.S.C. §523(a)(2)(A) and (a)(4). In the court's *Memorandum of Decision and Order* [Doc. #30], Defendant's Motion to Dismiss Plaintiff's second claim under 11 U.S.C. §523(a)(4) was granted. Danberry's claims for nondischargeability for fraud under 11 U.S.C. §523(a)(2) were permitted to go to trial, but the court held that path to nondischargeability was narrow, because claims based upon breach of contract are not generally excepted from discharge. *See*, *Memorandum of Decision and Order* [Doc. #30, p. 10].

Plaintiff was represented by counsel at trial. Defendant appeared *pro se*. The parties had had the opportunity to call and examine witnesses and present their arguments and evidence to the court.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. §§157(b)(1) and (b)(2)(I).

In reaching these conclusions, the court has considered all the evidence and arguments of the parties, regardless of whether or not they are specifically referred to in this opinion. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff has failed to prove nondischargeable damages resulting from Defendant's transfer of her home.

---

1/ There is a debt owed by Debtor to Danberry for breach of contract which was the subject of a state court judgment. *See*, *Danberry Co. v. Nadeau*, 2019 Ohio Misc. LEXIS 2181 (Ohio C.P., Oct. 3, 2019). On November 20, 2020, that judgment was affirmed by the state court of appeals. *Danberry Co. v. Nadeau*, 2020 WL 6819190, 2020 Ohio App. LEXIS 4213 (Ohio Ct. App. Nov. 20, 2020).

The procedural posture and the legal underpinnings of Danberry's claims leading up to this trial are detailed in this court's *Memorandum of Decision and Order* [Doc. #30] (hereinafter "Memorandum"),[2] which is incorporated herein by reference. That decision is "law of the case" in this proceeding. *See*, *In re J & M Salupo Dev. Co., Inc.*, 388 B.R. 809, 813 (Bankr. N.D. Ohio 2008)(citing cases).

In its Amended Complaint [Doc. #23], Danberry alleged that Debtor entered into the listing agreement with no intention of performing under the contract. The Amended Complaint also alleged that Debtor made this representation or representations with the subjective intent and purpose of deceiving Plaintiff so that Plaintiff would sign the listing agreement and procure a purchaser for the Property. [Doc. #23, ¶¶17-18, 24-28].

The court heard the evidence presented by Danberry and the Debtor. Based on the evidence presented, the court finds that the Debtor entered into the listing contract [Plaintiff's Ex. 2] with Danberry with the intent to perform under the contract. First, Danberry presented no evidence as to what might have motivated the Debtor to enter into a contract that would not benefit her unless the property were sold. In contrast, the Debtor's testimony reflected that she had made an offer on a new house based, in part, on reliance on the contract to sell the 920 Bury Road property. Showings of the house were conducted, and a contract for the sale of the property was executed by the Debtor. [Plaintiff's Ex. 3].

The evidence shows that Debtor was a difficult client, and became increasingly unreasonable as time went on. For example, Debtor asked for the buyers to agree to delay in closing on the 920 Bury Road property without a firm date when the closing would occur.[3] But,

---

[2]/ The unpublished decision can also be found at *Danberry Co. v. Nadeau (In re Nadeau)*, 2022 WL 4540235, 2022 Bankr. LEXIS 2778 (Bankr. N.D. Ohio Sept. 28, 2022).

[3]/ As the court previously found: "Debtor was unwilling to turnover possession of the Property because the house

3

the court finds that, at the time the contract was executed, Debtor intended to sell her property and pay Danberry a commission.[4]

Separately, Plaintiff presented evidence that the Debtor transferred 920 Bury Road to the 858 Revocable Living Trust, a self-settled trust with Debtor as the Trustee and her son as the residuary beneficiary. [Plaintiff's Exs. ##10-12]. Debtor also obtained a mortgage and borrowed against the Bury Road property. [Ex. #11].[5] In Adversary Proceeding 20-03045, this court previously held that the transfer of the Bury Road property to the 858 Revocable Living Trust was avoidable under 11 U.S.C. Section 548. *See*, *Dymarkowski v. Nadeau (In re Nadeau)*, 2023 WL 6332837, 2023 Bankr. LEXIS 2411 (Bankr. N.D. Ohio Sept. 28, 2023).

In the court's earlier decision ruling on Debtor's Motion to Dismiss the Complaint under Fed. R. Civ. P. 9(b) and 12(b)(6), made applicable to bankruptcy proceedings under Fed. R. Bankr. P. 7009 and 7012(b), the Memorandum discussed the fact that a subsequent act to hinder the collection of a judgment did not automatically make a debt for breach of contract nondischargeable. *See*, *Memorandum of Decision and Order* [Doc. #30, pp. 16 – 22]. However, Plaintiff was permitted to proceed with its claims because Ohio law allows damages, separate and apart from the claim for breach of contract, based upon a fraudulent transfer to avoid collection. As the court stated in the Memorandum:

> Accordingly, under Ohio law, fraudulent transfer can be a distinct cause of action, at least in the case of actual fraud. *See e.g.*, *In re Hrivnak*, 2018 WL 1115204 at *4, 2018 Bankr. LEXIS 559 at *10 (recognizing fraudulent transfer under Ohio

---

she intended to move into would not be ready five days after the closing." [AP Case #: 21-03045, Doc. #39, p. 5].

4/ There was an attempt by the Debtor to negotiate a lower commission with Danberry shortly after the contract was signed. When that proposed reduction was rejected, the parties continued to act under the contract in a manner that demonstrated their intent to perform under the listing contract.

5/ In Adversary Proceeding 20-03045, this court previously held that the transfer of the Bury Road property to the 858 Revocable Living Trust was avoidable under 11 U.S.C. Section 548. *See*, *Dymarkowski v. Nadeau* (*In re Nadeau*), 2023 WL 6332837, 2023 Bankr. LEXIS 2411 (Bankr. N.D. Ohio Sept. 28, 2023).

law as a distinct claim); *White v. Molnar Tr.*, 2022 WL 2112113 at *8, 2022 Ohio App. LEXIS 1851 at *22 (Ohio Ct. App. June 10, 2022)(noting appellees "demonstrated an underlying tort, fraudulent transfer," supporting their civil conspiracy claim); *Aristocrat Lakewood Nursing Home v. Mayne*, 729 N.E.2d 768, 782 (Ohio Ct. App. 1999)(noting that a creditor setting aside a fraudulent conveyance, in appropriate cases, "may recover compensatory damages, in addition to punitive damages and attorney fees"); *Profeta v. Lombardo*, 600 N.E.2d 360, 363 (Ohio Ct. App. 1991)(holding that the "trial court had discretion to grant the $5,000 money judgment under" Ohio's Uniform Fraudulent Transfer Act).

Plaintiff has alleged Debtor made a transfer on the eve of the Judgment, with actual intent to defraud Plaintiff. Plaintiff has also alleged some of the "badges of fraud" supporting intent to defraud. Thus what is alleged are facts that would support a claim for monetary damages arising from allegations of fraud.

"The amount of damages recoverable will depend on the facts of each case and what is necessary to compensate the creditor for harm flowing from the fraud." *Blood v. Nofzinger*, 834 N.E.2d 358, 372 (Ohio App. 6th Dist. 2005). Here, Plaintiff alleges harm flowing from Plaintiff's inability to collect. Plaintiff contends that post-judgment interest and the costs of seeking to avoid the transfer in state court are chargeable to Debtor, and requests a money judgment "against Defendant in an amount to be determined at trial, plus accrued interest at the contractual rate from and after September 9, 2019, up until the date of the judgment, and for interest allowed at the statutory rate for relief." [Doc. #23, p. 8]; see also, [*Id*. ¶28]. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). *At this point, Plaintiff has not quantified this amount, but it has stated a "claim" under applicable non-bankruptcy law.*

[Doc. #30, pp. 18-19 (footnote 8 omitted)]; *Danberry Co. v. Nadeau (In re Nadeau)*, 2022 WL 4540235 at *12, 2022 Bankr. LEXIS 2778 at **29-30 (Bankr. N.D. Ohio Sept. 28, 2022).

The omitted footnote discussed *Aristocrat*'s holding that: "a 'person injured by fraud is entitled to damages.' 729 N.E.2d at 783. The 'clear and convincing evidence' standard applies to proving both the existence of an actual fraudulent transfer 'and sufficient actual malice to recover punitive damages.' *Id*. at 784 n.23. On the other hand, the 'preponderance of the evidence'

standard applies to proving the existence and amount of compensatory damages.' *Id.*" *Danberry Co. v. Nadeau (In re Nadeau)*, 2022 WL 4540235 at *12 n.8, 2022 Bankr. LEXIS 2778 at *30 n.8.[6]

It would be an interesting question whether Danberry's evidence would be sufficient under the Ohio law requirement (assuming the court followed *Aristocrat*'s holding) to find "clear and convincing evidence" of fraud.[7] The courts previous decision was under the preponderance standard applicable to 11 U.S.C. Section 548 avoidance actions. However, the court is not required to make that determination, because Plaintiff presented no evidence of damages other than its state court Judgment for breach of contract.

Danberry needed to establish damages that resulted from the transfer of the Bury Road property to the Trust. Attorney fees, filing fees, and other costs or damages directly attributable to the transfer of the property had to be proven at trial. No such proof was offered. Accordingly, there are no proven damages for the court to find nondischargeable under Section 523(a)(2).

## **CONCLUSION**

Plaintiff has failed to prove damages resulting from Defendant's fraudulent transfer. Accordingly, Plaintiff is not entitled to have any amount held nondischargeable under Section 523(a)(2).

The court will enter a separate judgment in accordance with this Memorandum of Decision and its rulings at trial under Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52(c).

---

6/ The court notes that Plaintiff could have sought to deny Debtor's discharge under Section 727(a)(2), based upon her pre-Petition transfers to the extent they were intended to "hinder, delay or defraud a creditor", but elected to proceed just on the dischargeability of its debt under Section 523(a).

7/ The "Badges of Fraud" in this case were discussed in *Dymarkowski v. Nadeau (In re Nadeau)*, 2023 WL 6332837 at **8-11 & 14, 2023 Bankr. LEXIS 2411 **21-24 & 27-29 (Bankr. N.D. Ohio Sept. 28, 2023).

6